May it please the court. This case is about a consumer's right or ability to proceed in federal court about Article III standing and in particular about the injury in fact requirement for Article III standing which makes it a close cousin to the U.S. Supreme Court's decision in Spokio and to this circuit's decision in Muransky. Here plaintiffs alleged that they purchased supplements that contain illegal and banned ingredients that are not allowed pursuant to the FDA, that those FDA requirements are incorporated into the Florida, Illinois, and New York Consumer Protection Statutes under which plaintiffs bring claims and that because those products contain banned ingredients, they are worthless. The district court found that the plaintiffs failed to meet the injury in fact requirement for standing on the theory of economic harm, that the plaintiffs seeking the entire purchase price was not sufficient. In our view, that was incorrect and is subject to de novo review. There's no dispute that injury in fact requires a concrete injury. In the recent case of Muransky, which is a FACTA case, which is a congressional statutory right case in which the allegation was that a credit card receipt was as required by the FACTA, the case was initially dismissed for standing and came up on appeal. And in that case, this court said that the mayor basically the plaintiff having to keep up with the receipt and keep that receipt in his wallet and use that wallet storage space was a concrete injury, injury in fact that was sufficient for Article III standing. Here we have something far greater, I would submit. We don't have any real clear authority in the Eleventh Circuit. Some of the other circuits have . . . there's more recent opinions from both the Third Circuit . . . the Johnson and Johnson case, where is that, the Sixth Circuit? Johnson and Johnson case is in the Third Circuit. In the Third Circuit and I have the Ninth Circuit case. In the Ninth Circuit. But all of the cases that you rely upon to support your allegation of standing, they all include the plaintiff's having either a physical injury or a failure of the product to work as intended. You don't have either of those here, do you? No. We have district court cases such as the Honey cases in the district court here, such as the non-GMO cases where there's no physical injury. Physical injury is not a requirement for Article III standing. In fact, the Florida courts have recognized that an economic injury can be sufficient. I'm trying to find some support for your theory of economic harm, that the product was worthless because it contained an ingredient not approved by the FDA. And so that is the basis for your claim that you sustained an injury, your client sustained an injury, in fact? Yes, Your Honor. Okay. What's the best . . . that theory of economic harm, what's the best authority that you can point to that would support that theory as conferring an injury? The best authority would be the Ninth Circuit case in France, which is very similar. There, the allegation was that the supplement . . . it actually was a skin cream. And the skin cream made a structure claim which requires a new drug application with the FDA, and that wasn't done. So the allegation was that the skin cream could not have been legally sold on the market, and therefore the plaintiff should not have been able to buy it. The representation that it was legal to sell was false, and the plaintiff sought a refund. What would happen if you had a product that was approved, so FDA's fine with it, it's been sold, it's out on the market, and the FDA learns through some studies that, well, there's this one ingredient we're now uncomfortable with, we're not going to let you sell it anymore, but the risks aren't so great that we're going to have you recall it or tell people you can't use this, but we're just not going to let you sell it anymore. Would you still have an economic injury claim? That would be a much closer call. You might have a preemption problem. You wouldn't have an economic injury claim, is my thinking, because in that setting, the FDA hasn't said you can't use this. They've identified some risks that are on the cost-benefit analysis enough not to let them keep selling it, but if the FDA isn't saying stop using this, how could anyone say there's an economic injury? Because it's not worthless. We know it's not worthless. It wouldn't, in your hypothetical, it would not be worthless prior, it would not be worthless prior to that FDA decision because it was legal to sell. What you're talking about is very close to the Third Circuit case, the baby powder case, the Johnson & Johnson. It is, it is. That's very similar to that case in which the, and I think the distinguishing factor there is, there's no dispute that baby powder can legally be sold. No one's arguing that, and the plaintiffs are not able to say it's defective as to everybody. So what's happening in those cases, which spin out of the mass tort context, is certain plaintiffs are saying, I've been harmed by the baby powder by a physical injury. No one's able to say there's an economic injury divorced from the physical injury. Here, in this case, like in the Franz case, the injury is the product should not be on the market at all. It's a banned substance. Well, I mean, this is public information, so I don't know the answer. What is the FDA saying about DMBA? The FDA has issued warning letters, which are, which we allege in the complaint to other companies that have this particular stimulant is DMBA, which is banned by the WANDA, which is the World Anti-Doping Agency and the U.S. Doping Agency. And they've issued warning letters saying, you cannot use, represent this as a dietary ingredient. What's the harm that it causes? DMBA, what is the harm that it causes? If I take one of these dietary supplements myself, what's going to happen to me? It increases your, it increases your blood pressure and may have undesirable effects to increasing your blood pressure. It's a stimulant. Does it have physical benefits that, you know, like steroids are bad for you too, but athletes use them because it helps them perform better. What, does it have any benefits? Certainly, certainly the science people think it has benefits. It's been around since the 40s. Because the reason that I'm asking the question is, is this dietary supplement worthless if there are other consumers other than your clients who have no problem buying a supplement that contains DMBA. So it would not be worthless to some people. It might be worthless to your clients, but it might not be worthless to me if, if I am  The distinction is the product is being sold as if it's a legal drug and a legal ingredient and it's not. The representation is contained in the label. The implication is we can sell this and you can't. I understand that, but what if I don't really have a problem with the fact that it's a banned substance in there? I think For me, the product is not worthless. It has economic value. That to me would be a damages issue that defense could raise in response to our argument. We have an expert to come forward and say, this is worthless. And here's what the damages are. They could have an expert come out and say, no, as you, as you just said, it's not worthless to everybody. You could then do a hedonic regression analysis to try to tease that out. So then you're, you're closer to, well, okay, 12% of the population was comfortable that are to sort of segue over to a premium pricing type analysis, or you would say this part of the price is attributable to the misrepresentation. But that again, as a damages analysis, that's not a standing issue. We're talking about access to get through the gateway of the courthouse door to bring a client. But the time your clients bought this, it was legal. No, it's never been legal. Maybe I've got the facts wrong. I thought this was something that was bought and then the FDA came out. No. So they were selling it after the notice by the FDA. They were selling both before and after the, the FDA notice is irrelevant somewhat to our theory of the case. Because the way this works is if you have a new drug ingredient, something that hasn't been used before prior to October 15th, 1994. If it has not already been used in a food, you cannot put it into a dietary supplement unless you give the FDA 75 days notice and you provide the study showing this is safe. In this case, the allegation is the defendants didn't do any of that. So you never had the right to sell it. Eventually, the FDA sent warning letters to some of the other companies who were selling products with DMVA in it. So it's never been legal to sell in this country in our, in our theory of the case. We accept your theory of economic harm. Why wouldn't this open the floodgates? Let's say the product was labeled as, you know, I'm a patriotic American and I only buy American products made in the USA. And we find out the, I find out later that the product was made in China. We accept your theory of economic harm. Every time a product contains something that, that, uh, you know, it doesn't have as much of this product as it has another, and that would be sufficient to, that would be enough of an injury to confirm standing? Yes, it would be enough of an injury to confirm standing, it would be enough, well. It opened up the floodgates to tons of litigation in federal court. The, I hate to criticize the example, but the difference with the made in the USA examples are there are rules about how much of the product has to be made within the United States versus outside when you make that representation of an insignificant amount, like the buttons on the shirt, you can, you can do that and make that representation. But I could say this product has no economic value at all. It's worthless to me because it was made in China and not made in the USA. You, you could argue that. I don't think that will be a successful damages theory. Maybe what Judge Wilson is getting at is a subjective or an objective test for whether or not something is worthless or worth less. It's objective. It's, it's a reasonable consumer standard. So that's an objective standard. In this situation, we don't even reach that because the product's illegal to sell. It couldn't have been sold. Is it worthless or worth less? I mean, is it 95% of its value? You still have a claim. Our, our, our claim is that it is a one word worthless product. However, it could be worth less, two words, and we'd still have standing. That's just a damages issue. That'll be determined by experts. Wilson's point though, every, it's this case, every process violation, no matter whether it hurts anybody at all, you bring class actions for everyone that bought it. But this case is a case in which it did hurt everybody because it's illegal to purchase it. I think one of the things that. I'm sorry, that's, that's what a process violation means. All right. That's what makes it illegal. So, you know, to say somehow that decreases the size of the cases out there, I don't quite get, but go ahead, Judge Pryor. Um, I'm, I'm out of time, but I'll certainly answer any more. That's all right. So I, what I, what I was going to ask you is that courts are concerned about a buyer's remorse type of situation where somebody buys a product, they use some of it, and then they say, well, I wasn't satisfied. And suddenly you have economic injury. So what's the limiting principle that courts could use to avoid that problem? Well, the limiting principle, is it a statutory violation that sold the product? Is it sold in a deceptive manner, for example? If the product wasn't sold deceptively, for example, and that is the baby powder case. There's not, there's not an allegation in those cases that there was a misrepresentation about the baby powder. But then you go back to, it's okay for some people, but some people find that acceptable and others don't. So that seems subjective to me. No, no, no, no. There's no standing to bring that misrepresentation case. There's a standing to bring a personal injury. I was harmed by the product case. That's a subjective standard. If I'm injured as a consumer, then that is subjective. Physically injured. The economic injury is a reasonable consumer test. And to some extent, that would turn on standing. I mean, they certainly could have as a defense, no, no one was actually deceived by us selling this legal product. I mean, they could actually say, it's not illegal to sell it. I'm certain they'll make that argument. But at this point, we're not at issue on that. You would always get past motion to dismiss under your theory. Not if they were to argue that the product was legal as a matter of law, we could lose. But they weren't able to do that. All right. I think you've reserved some time for rebuttal. Mr. McLaughlin, we'll hear from Mr. Twombly. Thank you. Good morning. May it please the court. My name is Robert Twombly. I represent the Appalachee High School. I'm a member of the High School IQ Formulations LLC. Our position is the district court got it right. And I think for the same reasons, many of the same reasons you're already articulating. We're just asking the questions. Say that? We're just asking the questions. Well, I think you're pointing, we're all moving in the right direction as far as I'm concerned. If this product cannot legally be sold in the United States, then it has no economic value at all, right? So they purchased a product that has no economic value at all, because it cannot be purchased in the United States. It's worthless. That's their theory of economic harm. Why isn't that enough of an injury to confer standing? Well, number one, if that was the only standard, then that would mean that every purchase where someone buys something and subsequently the FDA or any other authority comes out and says, you know what, this product shouldn't be sold in the U.S. Because by the way, the facts are that the letters came out warning these other like producers after the product was already in the market. So generally speaking, the FDA doesn't provide a private cause of action to his clients. So what they do is they go through the process, they parse out the rulings of the FDA or the decisions, and then they apply that to state consumer law saying it's a misleading label. In this case, there are no allegations that the label was misleading. In fact, the ingredient was on the bottle. There are no injuries, no allegations of non-performance, no argument that they didn't get the benefit of their bargain. And that's what Hubert and Estrada both held. They said, you know what, you have to have a physical or some sort of economic injury. We'll take economic, but it has to be concrete and real. Otherwise, anybody who purchased the product can simply say, I did buy it, but you know what, I want my money back. What does he mean when he says it was illegal to sell from the outset? So first of all, it was not illegal to sell from the outset. That determination has not been made. There is a chemical DMBA that the FDA says it's not to be put in the market, okay? Our chemical was methylpentane citric, which as we stand here today, I don't believe is even the same ingredient. But taking his allegations as true, that would mean the FDA sent out letters telling manufacturers do not use this product anymore. If he's right that that is DMBA, then it should not have been sold. And this is a motion to dismiss, right? It's a motion to dismiss, correct. So he's right. It was illegal to sell it from the outset under the allegations of the complaint. If his allegations are taken as true, you're absolutely right, Your Honor. But the point is— So then you're back to Judge Wilson's point. It's illegal to sell. You bought it without knowing it was illegal. And to you, it's worthless. So to say it's worthless is assuming you've consumed it. We talked a little bit about the talcum powder cases. Or we could talk about the GNC products in Huber. People consume these. They're saying legally it's worthless to sell. It has no value. But people bought this, used it, suffered no effects, didn't say it didn't perform. In fact, their clients went back and bought it multiple times because it performed. It did have a value. It did work. I mean, it does focus your attention. And people used it for workout purposes and dietary purposes. So it's not worthless. They're saying it has zero value because they're arguing that it's misbranded or it's adulterated. And those are terms that come out of the FDCA. Then they apply that to a label and say, look, under state law, we have a private cause of action under FDUPTA in Florida, for example, because the label was misleading. None of these are allegations that are in the complaint. We're in a motion to dismiss. Federal court, you have to support your allegations with facts. They don't do that. They basically leave us to guess. We bought it, and therefore, we want our money back. OK, well, did it perform? They don't say it didn't perform. Did you get hurt? They don't say they got hurt. Did you lose a premium? Did you overpay? They don't say that. None of those things are out there. It's not a real concrete injury. It's theoretical. So if they had paid a premium, would you agree that they're standing? In other words, they bought this product, paid more for it than a similar product, and this one is illegal to sell. You would agree they're standing there? Yes, ma'am. All right, so let's suppose they paid $10 for this product, and they would have paid $5 for the other product, right? That's an injury in fact. Yes. What's the difference between that and saying we paid $10, but we should have paid $0? So the difference is that just saying I paid $10, and then I find out there's an illegal ingredient, so it's technically $0. That's sort of a theoretical in the air. It's not a concrete injury. If you had said I bought product A as opposed to product B, that's concrete. You lost money. You were misled. You bought the wrong product. But what if you're misled, and you just bought the product? You didn't buy any product as an alternative. I would say that wouldn't meet the test, because that's not a concrete injury. Well, I spent $10 that I wouldn't have spent. Why is that not a concrete injury? Because you haven't alleged whether you didn't perform, whether you were injured. You used the product. So for example, in the baby shampoo cases, which is Medley and James versus Johnson & Johnson, people, you know, there was a chemical in there that was dangerous. People bathed their children in this shampoo. The children suffered no ill effects. They didn't say it didn't perform, and they didn't argue that they paid a premium. So the court came back and said, look, I get it. You know, this chemical was banned, but you've not suffered a concrete injury. There is no injury. You used the product. It worked. And that's similar to what happened here. Let me see if I understand it now. Let's say you buy a bottle of this supplement for $30, and then you find out, uh-oh, it contains an adulterated and illegal ingredient. I'm not going to use it. You're out of $30. You're out of $30, right? Well, technically, yes, but did you use the product? Did the product perform? No, I didn't use the product. I found out after I bought it that it contains this ingredient that's not approved by the Federal Drug Administration. I'm not going to use it, but I'm out of $30. Do I have an economic injury? That's an interesting argument, because if you haven't consumed it, you could argue that no ill effects, non-performance, you don't know. It's almost like if somebody warehouses this and they can't resell it. I think that would be different than the facts in our case, and that's not what was alleged in this case. As we are at a motion to dismiss, they've alleged simply that they purchased it. If they want to say that they purchased it and didn't consume it, purchased it, consumed it, I think those things should have been alleged before we got here today. I thought they did allege that it has no economic value because I can't use the product. Right, but they haven't alleged whether they consumed it or didn't consume it. In your scenario, you are asking whether or not, if you had it and you hadn't consumed it. If you don't consume, you have Judge Wilson's thing where you probably do have economic injury, but if you consume, the only way you can come to court is if you're actually injured by the problem. That's your theory. Injured is not my theory. It's actually the third, and additionally, in Estrada and both in Hubert. If you're not hurt, it didn't not perform. In other words, it performed and you didn't pay a premium. So how do you deal with this Aquedots case, the Judge Easterbrook opinion, the Seventh Circuit? You know, it's funny. Aquedots is a premium case. Aquedots is a premium case. So that is actually, the argument was that they paid more than another product. So that would fit. So if they'd alleged I paid more for product A than B, that's a premium argument. That would give them standing. I didn't read it as a premium case, but maybe I misread it. I'll read it again. Yeah, no, I believe it's a premium case. Because it's one product versus another? Yes, sir. I suppose that's always true, though. Well, actually, it's not. You have to allege it. There are lots of dietary supplements. They could have alleged that, and I don't think they can because they'd have to show that one costs more or less than the other. So they didn't do that. They just simply said, you know what? I purchased it. I want my money back. That's not standing. That's not enough. That's an injury, in fact, to get you to stand. I don't get the idea that, I mean, it seems funny to me when something's made illegal after you buy it. That seems to help you. But in a situation where it's illegal before you buy it, you don't know that. You're not expected to be up to date on all the FDA stuff. Correct. You find out it's illegal, and OK, fine. It didn't hurt you. You're lucky. Why isn't it worthless? That's exactly what they found in Estrada. Some of the talcum powder, scientifically proven, can lead to ovarian cancer. But the lady who brought the cause of action hadn't suffered any ill effects and wasn't likely to suffer. So the court said, until there's a concrete diagnosis or you actually have a physical injury, then the product worked. You didn't overpay or didn't allege you overpaid for it. You have no injury. Otherwise, every time something comes out after the fact and they say, oh, you know what? This product was found later, two years later, to have a chemical. That's why I didn't do after the fact. I get the after the fact problem. And if the FDA doesn't say, don't consume it, that seems different. They seem to be assuming there's value here. We'll let you go forward. But their point is this was illegal from the beginning. So I don't believe it was illegal from the beginning because they haven't, first of all, the letters that came out came out, I believe, after the purchase. So it's like this product was already in the market. So they sent letters out, not to our client, but to other like producers and said, you know what? You can no longer sell it. As we stand here today, nobody has determined whether or not this is an illegal ingredient. It just hasn't been determined. But they haven't pled any of the items that would get them an injury to go down there and challenge this. All they did is purchase it. That's all they did. And based upon that, they're saying, we have concrete damages. And they don't. Because the third has said, Hubert and Estrada both said, if you don't have a physical injury, non-performance, or a premium argument, really what you're doing is it's a conclusory statement. It's an allegation. That's not good enough. All right. Thank you, Mr. Quamley. We'll hear from Ms. Bohannon. Thank you, Judge Wilson. Thank you, Mr. Quamley. May it please the court. Erin Bohannon on behalf of Europa Sports Products, Incorporated. With me at council table is Bruce Katzen. The appellants failed to allege that they suffered an injury in fact, and the district court's ruling should be affirmed. As the court knows, Europa has joined in the argument of its co-appellee. And with respect to the distributor, our client, the arguments are essentially the same. However, it's significant to note that appellants included Europa in this case on the sole basis that it is a distributor. Europa is not alleged to have any involvement in the formulation of the products. The manufacture of the products or the labeling of the products. Now, in addition to alleging an actual injury in fact, the appellants must demonstrate that the injury is fairly traceable to both of the dependents in this case. Appellants failed to specifically allege, in addition to failing to allege an injury in fact, that they even purchased the products from Europa. Specifically, if you look at tab one of the appendix at paragraph seven and eight, the plaintiffs purchased these products from Walgreens.com, naturalbodyinc.com, and ebay.com. Plaintiffs failed to allege any underlying effects demonstrating that Europa distributed the products to these online retailers. Now, your honors, that becomes significant because when you're dealing with online outlets like eBay, for example, the products could have come from anybody. So in addition to failing to allege the injury in fact, in general, a concrete and particularized injury that they suffered by buying these products, they've also failed to trace the injury to the defendants in this case. Now, I'd like to follow up on a few of the points raised by the court. As explained in the motions to dismiss in this case, determining whether a new dietary ingredient is in fact a new dietary ingredient or adulterated is a fact-intensive process. There's no authoritative list of new dietary ingredients, and the FDA has determined, has not determined that DMBA is a new dietary ingredient. This can be found at tab 28 of the record at page three and seven through nine. Also significant, the FDCA does not provide a private cause of action. 21 U.S.C. 337A states that all proceedings for the enforcement to restrain violations of this chapter shall be in the name of the United States. Now, that's significant to this case because the plaintiffs are grounding their claims and their alleged injury in purported violations of the FDA. Let me ask you this question. Is Europa the only distributor of this dietary supplement or are there other distributors? Yes, plaintiffs allege in the case that IQ, the manufacturer, is also a distributor of their own products. So based on their own allegations, it's impossible to determine whether the products came from IQ as opposed to Europa. Okay. And let's see now. They are both defendants in this case. Yes, Your Honor. So why in the injury traceable to either of them if they would not have purchased the products if they were not distributed by either of these distributors? That's an injury that they sustain that's traceable to the two distributors because they would not have been able to purchase the product had they not been distributed by the distributors, the exclusive distributors, right? Yes, Your Honor. That is correct. However, the plaintiffs bear the burden in this case to trace their injury to one of the defendants. There are two plaintiffs. There are two defendants. The plaintiffs purchased different products on different dates. If the plaintiffs haven't met their burden to demonstrate that on September of 2015, for example, when DeBernadette brought his product, that he purchased a product coming from my client, then he lacks standing as to my client. This is a constitutional threshold, and it's just one part of the three-part test of standing laid out in Lujan versus the defenders of wildlife. Counsel, are you familiar with this Aquedots case, the Seventh Circuit case? Your Honor, honestly, I'm not. Okay. All right. Keep going then. That's fine. Thank you very much. Now, I also wanted to follow up on a point raised earlier. The FDA letters in this case did come out after the plaintiffs purchased their product. I just wanted to clarify that for the record. That's in the complaint, the Paragraph 7 and Paragraph 8, as well as Paragraph 34. Your Honors, I see my time is out. The district court's decision was correct, and we respectfully request that you affirm. Thank you. Thank you, counsel. Mr. McLaughlin, you have reserved some time for rebuttal. Thank you. In order to have Article 3 standing, you have to have an injury in fact. There is no requirement that an injury in fact be a physical injury. Under these state statutes, it's recognized that economic injury will suffice. Let's say you're right, and let's say it benefits you that we're at the motion to dismiss stage where we don't have a lot of . . . all you have is allegations. You don't have discovery. But standing is something you have to meet throughout a case. I'm trying to figure out if you win, what happens next? I know you want to have a class, and so you have your representative members. Let's say they're deposed, and let's say they're asked, okay, what happened to you? They say, well, I used it. It worked. Nothing unusual happens. There's no physical injury. They continued to use it, and the only reason they stopped is this FDA notice. What happens to the case at that point? I think at that point, I'm skeptical that there's still injury in fact. Their problem was not that it was, quote, illegal from the beginning. Their problem was the notice. The notice is what gave them pause, but the FDA didn't say stop using this. It said stop selling it. And they can't point to physical injury, and they got the benefit of their bargain. At that point, all you've got is the, well, at some point down the road, they might be hurt. And that's what makes it worth a little less than it otherwise was. That's going to be your injury in fact at that point? That's not our case. Okay. We're not trying to show that they were physically injured. This case is about a deceptive representation. Okay. It so happens, this representation involves selling a drug that's not legal. On our theory, because of FDA requirements, which are incorporated into these state consumer statutes. Let's suppose it was some other misleading representation. For example, the made in the USA representation would suffice in this example. Where they said, okay, this product was made 100% in the United States. And it turns out none of it was made in the United States. That's deceptive conduct. And the consumer protection statutes provide a remedy that you can sue for that. You can then have a debate about what the damages are. We would allege the product is worthless. And as Judge Wilson said, you could have people who say, well, no, there's still some value there. And that's a subject for expert testimony and whether or not we can persuade a jury that our damages estimate is right. But you would still have standing. That's closer to what we're alleging here. Because it's all damages. And as long as every plaintiff in the class says, I wouldn't have bought it. It's just a damages calculation. It's not an Article III problem. That's your basic point. Yes, Your Honor. Which is in line with Spokio, in line with Moransky. If there's a statutory right to sue and you can point to something concrete. And here we have an allegation that money was paid that would not otherwise have been paid. That suffices. That's not Spokio. At least not the U.S. Supreme Court's decision in Spokio. True, true. Well, that's the opposite. They said Congress is not in charge of what Article III injury is. So you can't say Spokio says we don't pay attention when Congress speaks. That's correct, Your Honor. But the point that I was trying to make with respect to Spokio is the concrete injury itself does not have to be physical. There's no physical requirement that a statutory right with something else that's concrete can suffice. You're right. Spokio was sent back and remanded in order for the plaintiffs to try again in that case. In Moransky, it was not remanded. This Court said that the plaintiff's allegation concerning the lack of truncation of the credit card receipts was sufficient, that the plaintiff had to keep up with that receipt. That was sufficient in itself to be an injury. And there was no physical requirement here. In this case, we have an allegation that the plaintiff has spent, the plaintiffs have spent $30 to $60 per product that they contend is worthless. And whether or not it's actually worthless or worthless, one word or two words, is a merits issue, not a standing issue. I guess we're trying to figure out here whether or not a standing determination is premature or can it be revisited later after you get into the case. We'll just have to figure that out. I think as a practical matter, it would have the same . . . whatever the label is, we could still fail later down the road. I see my time is up. Thank you, counsel. Thank you.